UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

GEORGE ZIMBELMAN,                    )
                                     ) No. CV-05-0324-AAM
            Plaintiff,               )
                                     ) ORDER GRANTING DEFENDANT'S
v.                                   ) MOTION FOR SUMMARY JUDGMENT
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social               )
Security,                            )
                                     )
            Defendant.               )
                                     )

        BEFORE THE COURT are Plaintiff's Motion for Summary Judgment
(Ct. Rec. 7) and Defendant's Motion for Summary Judgment (Ct. Rec.
8), noted for hearing without oral argument on May 29, 2006 (Ct.
Rec. 6).  Plaintiff George N. Zimbelman ("Plaintiff") filed a
reply brief on May 15, 2006.  (Ct. Rec. 10).  Attorney Tom G.
Cordell represents Plaintiff; Special Assistant United States
Attorney David R. Johnson represents the Commissioner of Social
Security ("Commissioner").  The Court has taken these matters
under submission without oral argument. After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 8)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 7).
///

**JURISDICTION**

On October 24, 2000, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB" and Supplemental Security Income ("SSI") payments. (Administrative Record ("AR") 19, 85-87, 776-777).  He alleges he has been unable to work since May 1, 1998 (AR 85, 776), due to lower back, right hip, and left knee impairments (AR 102).  After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Hearings were held before ALJ Mary Reed on April 18, 2002 (AR 789-817)and June 27, 2002 (AR 818-861), at which Plaintiff appeared with counsel and testified on his own behalf.  Also offering testimony at the hearings were medical expert, Glen Almquist, M.D., and Debra Lapoint, a vocational expert.  On September 23, 2004, the ALJ determined Plaintiff was not disabled because he can perform a significant range of light work.  (AR 19-37). When the appeals council denied review on September 14, 2005 (AR 10-13), the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

Plaintiff filed this action seeking judicial review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payment pursuant to 42 U.S.C. § 405(g) on October 19, 2005.  (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 53 years old on the date of the ALJ's decision.

(AR 19).  He has a high school education. (AR 19).  He last worked
on May 1, 1998 as a driller helper, considered semi-skilled heavy
to very heavy work.  (AR 854-855). While working as a well driller
helper he suffered an injury to his left knee in 1977 and his mid
and lower back in 1998.  In 2000, he injured his back while
haying.  (AR 826).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as
the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
Act also provides that a Plaintiff shall be determined to be under
a disability only if any impairments are of such severity that a
Plaintiff is not only unable to do previous work but cannot,
considering Plaintiff's age, education and work experiences,
engage in any other substantial gainful work which exists in the
national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
Thus, the definition of disability consists of both medical and
vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
is engaged in substantial gainful activities.  If so, benefits are
denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If
not, the decision maker proceeds to step two, which determines

whether Plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

     If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, Plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents Plaintiff from
performing work which was performed in the past.  If a Plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, Plaintiff's residual functional capacity ("RFC")
assessment is considered.  If Plaintiff cannot perform this work,
the fifth and final step in the process determines whether
Plaintiff is able to perform other work in the national economy in
view of Plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

*Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601–602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged date of disability. (AR 20). At step two, the ALJ found that the medical evidence established the Plaintiff suffered from severe alcoholism, degenerative disc disease, left knee arthritis and mild chronic obstructive pulmonary disease ("COPD"). (AR 31). Though Plaintiff has impairments considered severe, the ALJ concluded

that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 39, 42).

After finding the Plaintiff's testimony regarding his pain, symptoms, and limitations not credible (AR 32-33) the ALJ concluded that prior to May 2001, Plaintiff had the RFC to perform a somewhat restricted range of light unskilled work. Specifically, the ALJ concluded Plaintiff could not perform work that would require more than ocassionally lifting/carrying 20 pounds; frequently lifting/carrying 10 pounds; standing two hours at a time; occasionally pushing/pulling with his left leg more than 20 pounds; and occasionally causing him to kneel, squat or crawl. After Plaintiff's knee impairment became sympomatic in May 2001, Plaintiff's RFC was more limited in that he was only able to walk for 30 minutes at a time for a total walking of 2 hours out of an 8 hour day. The ALJ found that with these restrictions he would not be able to perform his past relevant work. (AR 34). In response to the ALJ's hypothetical questions, the vocational expert testified that a person having the hypothesized restrictions could perform such jobs as a parking lot attendant, outside sales deliverer, production assembler, and until May 2001, a mail clerk. (AR 35). Based on testimony from the vocational expert, the ALJ determined that Plaintiff retains the capacity for work that exists in significant numbers in the national economy. The ALJ, therefore, found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 41-42).

## **ISSUES**

Plaintiff contends that the Commissioner erred as a matter of

law.  Specifically, he argues that (1) the ALJ erred by concluding his lung impairment was not severe at step two of the sequential evaluation process; (2) the ALJ erred in finding the Plaintiff not credible; (3) the ALJ erred in failing to consider the state Department of Labor and Industries finding; and (4) the ALJ's residual functional capacity determination was not properly supported.  Plaintiff challenges the determination that he can perform a "narrow range" of light duty work and instead suggests the evidence shows he is limited to sedentary activities and as such, is disabled.

The Commissioner opposes the Plaintiff's motion and requests the ALJ's decision be affirmed. Ct. Rec. 9.

## DISCUSSION

**A. Step Two: Pulmonary Impairment**

Plaintiff has complained in the past of being short of breath (AR 753) and claims his shortness of breath limits his ability to work.  Ct. Rec. 7, Ex. 2 at 2.  He does not deny smoking at least pack of cigarettes a day.  (AR 753, 831).  On January 23, 2001, pulmonary function testing showed a "moderate obstructive lung defect with an insignificant response to bronchodialator."  (AR 440). On November 17, 2002, Plaintiff underwent a right thoracotomy, decortication, and right middle and lower lobectomies, resulting in the removal of a substantial portion of his right lung.  (AR 634-636). He was discharged from the hospital on December 18, 2002.

While the ALJ found Plaintiff's mild chronic obstructive pulmonary disease qualified as a "severe" impairment under the social security regulations, the ALJ declined to find his alleged

breathing difficulty as a result of the lung surgery severe.
Plaintiff complains the ALJ erred in discounting his breathing
problems as not severe because the consulting physician, Dr.
Whitehouse, upon whose report the ALJ relied in reaching this
conclusion, failed to recognize Plaintiff had undergone
lobectomies of his right lung and discounted Plaintiff's effort on
examination.

At the request of the ALJ, on December 18, 2003, Plaintiff
was examined by Dr. Alan C. Whitehouse, M.D. for an evaluation of
"his claim of emphysema" and for pulmonary function studies.
According to Dr. Whitehouse, the best of each spirometry study was
taken, despite what he believed to be "poor effort on the part of
the patient." (AR 754). Dr. Whitehouse concluded that at best, the
test results showed a "mild degree of airway obstruction,"
although he questioned whether there was any obstruction. (AR
754). Dr. Whitehouse opined that his examination revealed "equal
breath sounds" with "no appreciable airway obstruction" and no
evidence of any significant degree of emphysema or other
respiratory impairment. (AR 753-754).

Even assuming *arguendo* that the ALJ did error at Step 2 in so
finding, any such error was harmless because the record does not
support greater limitations than those found by the ALJ. Despite
Dr. Whitehouse's imprecise characterization of Plaintiff's lung
procedure, the pulmonary function tests conducted by Dr.
Whitehouse revealed very little change or even slight improvement
///
///
///

from Plaintiff's pre-operation testing.[1] In addition, the ALJ concluded that Plaintiff had chronic obstructive pulmonary disease which qualified as a severe impairment.   Thus, ultimately, at Steps 4 and 5, despite Dr. Whitehouse's suggestion that Plaintiff had no work related pulmonary limitation, the ALJ accommodated Plaintiff's pulmonary impairment by finding the Plaintiff restricted to a narrow range of light work which could not involve prolonged walking.

Plaintiff also claims the ALJ failed to fully develop the record in terms of Plaintiff's pulmonary restriction because the use of pulmonary function test as a measure is a poor indicator of pulmonary function and because Dr. Whitehouse failed to accurately characterize the full extent of Plaintiff's previous lung operation.   Ct. Rec. 7 at 3. "[T]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). An ALJ's duty to develop the record is triggered either by ambiguous evidence or by the "ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan*, 242 F.3d at 1150 (citing *Smolen*, 80 F.3d at 1288).

Recognizing this need to develop the record regarding Plaintiff's pulmonary function, the ALJ ordered the consultative examination by Dr. Whitehouse.   Despite Plaintiff's disagreement

---

[1] In January 2001, Plaintiff's pulmonary function tests reflected a Forced Vital Capacity (FVC) of 90 and a Forced Expiratory Volume in 1 second (FEV1) of 68 with an insignificant response to bronchodialator.  (AR 440).  Dr. Whitehouse's testing reflected a FVC of 87 and FEV1 of 77.  (AR 755).

with Dr. Whitehouse's means of testing and conclusions, Dr.
Whitehouse's examination and resulting report was not ambiguous,
incomplete, inconsistent, or inconclusive, and provided
substantial support for the ALJ's findings.  While the ALJ does
have a duty to develop the record, the regulations require only
that the medical evidence be complete enough to make a
determination regarding the nature and effect of the claimed
disability, the duration of the disability, and the claimant's
residual functional capacity. 20 C.F.R. § 416.913(e).  It is
difficult to decide what quantum of evidence is adequate, however,
in this case, the evidence provided was sufficient for the ALJ to
make such a determination.  Moreover, as discussed above,
Plaintiff shoulders the burden of producing evidence of
disability, not the ALJ.

**B.    Credibility**

To accept Plaintiff's claims of disabling orthopedic problems
and shortness of breath, the ALJ would have to find Plaintiff
credible. See 20 C.F.R. §§ 404.1529, 416.929 (permitting the
evaluation of, among other things, inconsistencies in the
evidence, and conflicts between a claimant's statements and the
rest of the evidence, to determine the extent to which symptoms
affect capacity to work). Here, the ALJ found that Plaintiff's
statements regarding his pain, his symptoms, and his limitations
were not persuasive, to the extent he claimed he could not work.
(AR  32-33).  The ALJ's credibility findings were properly
supported, and are entitled to deference.

Whenever an ALJ's disbelief of a claimant's testimony is a
critical factor in a decision to deny benefits, the ALJ must make
explicit credibility findings. *Rashad v. Sullivan*, 903 F.2d 1229,

- 11 -

1231 (9th Cir. 1990); *see Albalos v. Sullivan*, 907 F.2d 871, 874
(9th Cir. 1990) (implicit finding that claimant was not credible
is insufficient); *see also Lester*, 81 F.3d at 834 (the ALJ must
provide clear and convincing reasons for discrediting a
Plaintiff's testimony as to severity of symptoms when there is
medical evidence of an underlying impairment). Indicia of
unreliability upon which an ALJ may rely to reject Plaintiff's
subjective complaints include: (a) activities inconsistent with a
finding of a severe impairment; (b) discrepancies in Plaintiff's
statements; (c) exaggerated complaints; and (d) an unexplained
failure to seek treatment. *See Fair v. Bowen*, 885 F.2d 597, 603-04
(9th Cir. 1989) ("if, despite his claims of pain, a claimant is
able to perform household chores and other activities that involve
many of the same physical tasks as a particular type of job, it
would not be farfetched for an ALJ to conclude that the claimant's
pain does not prevent the claimant from working."). If properly
supported, the ALJ's credibility determinations are entitled to
"great deference." *Green v. Heckler*, 803 F.2d 528, 532 (9th Cir.
1986).

    The ALJ spent an entire page of her decision explaining her
decision to discredit Plaintiff's testimony that he is unable to
work. The ALJ noted, for example, that Plaintiff stated he could
only sit for up to one hour and is limited in his ability to walk
and stand, yet he is able to lift and carry 10 pounds, cooks,
cleans and drives. (AR 32). Plaintiff testified he watches
probably ten hours of TV (AR 841), visits with friends for an hour
(AR 841), plays cards, goes grocery shopping and fishes. (AR 842).
He has his own boat which he gets on and off the trailer by
himself. (AR 845). Plaintiff testified he chopped wood, pulled

weeds and was up and down a ladder painting his house. (AR 851).
Though it still bothered him, Plaintiff he still mowed his lawn.
(AR 851).  The ALJ mentioned there were multiple inconsistencies
in the record regarding the Plaintiff's own statements (AR 32).
The ALJ further noted that Plaintiff gave inconsistent statements
to doctors and exhibited poor effort on testing (AR 32).  The ALJ
further observed that Plaintiff's stated limitations were
inconsistent with the findings of medical examinations
demonstrating he had "normal range of motion, normal neurological
examinations related to his alleged musculoskeletal impairments."
(AR 32). Though the ALJ's suggestion that Plaintiff did not seek
treatment from November 1998 and April 1999 was incorrect, the
ALJ's remaining credibility findings are properly supported, based
upon permissible grounds, and are sufficiently specific to permit
the Court to conclude the ALJ did not arbitrarily discredit the
Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th
Cir. 2002).  Accordingly, the ALJ's credibility finding is
entitled to deference.

**C.    Residual Functional Capacity**

   *1. Department of Labor and Industries Finding*

   Plaintiff contends the ALJ erred by failing to discuss the
disability finding of the State of Washington regarding
Plaintiff's workers compensation claim.  However, a determination
of disability by a state agency is not binding on the
Commissioner, even when the state standards are more rigorous than
those used to determine disability under the Social Security Act.
*Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990).  The ALJ's
failure to discuss the finding was not reversible error because
the ALJ is not required to discuss every piece of evidence, rather

the ALJ is only required to explain why significant, probative
evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395
(9th Cir. 1984).

    *2. William Davis and David Ellis*

    Plaintiff argues the ALJ should have accorded more weight to
the opinions of Plaintiff's chiropractors, David Ellis, D.C. and
William Davis, D.C., who Plaintiff claims opined Plaintiff could
only perform less than a full range of sedentary employment.

    Chiropractors are not considered acceptable medical sources
under 20 C.F.R. § 404.1513(a). Information from chiropractors is
listed as another source which may also help the agency understand
how a claimant's impairment affects his or her ability to work.
Id. at § 404.1513(e).  Although a chiropractor's opinion does not
have the status of that of a physician, chiropractic evidence
regarding how an impairment affects the claimant's ability to work
is considered by the Commissioner under the same regulatory
provision as lay testimony and, thus, cannot be disregarded
without giving reasons germane to each witness for doing so.
*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing
*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). One
reason for which an ALJ may discount lay testimony is that it
conflicts with medical evidence. *Vincent v. Heckler,* 739 F.2d
1393, 1395 (9th Cir. 1984). The ALJ's decision in this case met
these standards.
///
///
///
///
///

The treatment records of Dr. Ellis and Dr. Davis were not disregarded by the ALJ and were discussed by the ALJ.[2]  In fact, in concluding the Plaintiff had the capacity for a narrow range of light work, the ALJ noted that the majority of examiners of record, including the Plaintiff's (most recent) chiropractor, had opined that the claimant could return to work with some restrictions.  Although the restrictions assessed by Dr. Ellis (and earlier by Dr. Davis) were slightly more restrictive than those ultimately accepted by the ALJ, the ALJ's opinion was adequately supported by substantial evidence which the ALJ viewed as more persuasive evidence of the Plaintiff's work limitations.

The Court may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  If the evidence can reasonably support either confirming or reversing the Commissioner's decision, the Court may not substitute our judgment for that of the ALJ.  *Id*.  Thus, while it may have reasonable for the ALJ to accept the chiropractors more limited assessments, in a case where the evidence is susceptible to more than one rational interpretation of the evidence, the Court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

---

[2]  Plaintiff claims the ALJ "mischaracterized and/or dismissed" the chiropractor's opinions but does not provide any citation to the record or other explanation for this assertion. Ct. Rec. 7 at 6.  It is not the duty of the court to develop Plaintiff's arguments for him, find the legal authority to support those arguments, or guess at what part of the Record may be relevant. *See In re Morrissey*, 349 F.3d 1187, 1189 (9th Cir. 2003).

1      *3. Light Work v. Sedentary Work*

2          Last, Plaintiff asserts that the ALJ should have concluded

3      that he had a RFC for sedentary work, not light work, which would

4      make him disabled under the grids. Because the ALJ found Plaintiff

5      to have the capacity for a "narrow range" of light work[3], as

6      opposed to "all or substantially all" of the requirements of light

7      work, Plaintiff erroneously contends that SSR 83-10 and 83-11

8      directs the ALJ to apply the sedentary guidelines. The ALJ

9      properly concluded, based on substantial evidence, that Plaintiff

10     had an RFC for light work, except that he is unable to stand or

11     walk for prolonged periods of time, could not work at unprotected

12     heights, could not kneel, squat or crawl more than ocassionally,

13     and could not push or pull with his left leg more than 20 pounds.

14     When the plaintiff's circumstances do not match all the

15     corresponding criteria in a rule, the grid does not direct a

16     conclusion, see SSR 83-10, but instead is to be used as guidance

17     for deciding whether a plaintiff is disabled. *Santiago v.*

18

——————————————

19          [3]    Under the regulations promulgated by the Social Security

20     Administration (SSA),

21          Light work involves lifting no more than 20 pounds at a time
            with frequent lifting or carrying of objects weighing up to 10
22          pounds. Even though the weight lifted may be very little, a
            job is in this category when it requires a good deal of
23          walking or standing, or when it involves sitting most of the
            time with some pushing and pulling of arm or leg controls. To
24          be considered capable of performing a full or wide range of
            light work, you must have the ability to do substantially all
25          of these activities. If someone can do light work, we
            determine that he or she can also do sedentary work, unless
26          there are additional limiting factors such as loss of fine
            dexterity or inability to sit for long periods of time.
27

28     20 C.F.R. § 416.967(b).

*Barnhart*, 367 F.Supp.2d 728, 735 (E.D.Pa. 2005) (citing SSR 83-12, 1983 WL 31253). Furthermore, when the extent of the erosion of the occupational base is not clear, the adjudicator is encouraged to consult a vocational expert. SSR 83-12 at *2; *see also Boone v. Barnhart,* 353 F.3d 203, 210 (3d Cir. 2004) (explaining that a "VE can provide a more individualized analysis as to what jobs the claimant can and cannot perform than does [an ALJ's] determination of the claimant's remaining occupational base." (citing SSR 83-12)). The ALJ found Plaintiff was not capable of performing all, or substantially all, of the requirements of light work.  A Vocational Expert was consulted and asked whether there were a sufficient number of jobs that Plaintiff could perform given his RFC. The ALJ found that Plaintiff could not do all light work, but that Plaintiff could perform significant work that is unskilled and light based on testimony by the Vocational Expert. (AR 856-858).  The VE testified that a significant number of jobs in the regional economy exist for persons with Plaintiff's residual functional limitations. (AR 34-36). The ALJ credited the VE's testimony, which served as substantial evidence for his decision that Plaintiff is capable of making a successful adjustment to light work and that exists in significant numbers in the national economy. (AR 35).

Upon careful and independent consideration, the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law.

### **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial

evidence and free of legal error.  Based on the foregoing, the undersigned finds that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

        **IT IS ORDERED**:

        1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 7**) is **DENIED**.

        2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 8**) is **GRANTED**.

        3.    The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

        **DATED** this ___11th___ day of September, 2006.


                                        s/ Alan A. McDonald
                                        ALAN A. McDONALD
                              SENIOR UNITED STATES DISTRICT JUDGE